UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DANVILLE/URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>LOUIS JAMES<br><br>Defendant | No.: 04-20025 |

**DEFENDANT'S COMMENTARY ON SENTENCING FACTORS**

NOW COMES the Defendant, LOUIS JAMES and Richard H. Parsons, Chief Federal Public Defender for the Central District of Illinois, by and through TIFFANI D. JOHNSON, Assistant Federal Public Defender, and pursuant to Title 18 U.S.C. Section 3551, 3553, 3582, 3561 & 3661, and pursuant to the recent Supreme Court decision in *Booker* submits the following sentencing memorandum on behalf of the defendant:

**I.  Procedural History of Case**

On April 7, 2004, a three-count indictment was filed charging Mr. James with (1) possessing 50 or more grams of cocaine base (crack) with the intent to distribute; (2) carrying a firearm in furtherance of a drug trafficking crime; and (3) being a felon in possession of a firearm. On September 21, 2004, the Defendant was found guilty of all three counts. There were various drug types and amounts involved, and the jury did not indicated which drug amounts and type should be attributed to Mr. James.

**II.  Presentencing Report**

On December 3, 2004, the probation department prepared a presentence report where they

1

attributed all of the drug amounts mentioned at trial to Mr. James to create a base offense level of 32. The probation officer went on to find that Mr. James was subjected to chapter four career offender sentencing enhancements pursuant to U.S.S.G. § 4B1.2(a)-(b) based upon convictions for (1) Aggravated discharge of a firearm, Macon County Cir. Ct. Docket No.: 95-CF-869 and (2) Unlawful possession of a controlled substance with intent to deliver, Macon County Cir. Ct. Docket No.:98-CF-45. As these were Mr. James' only prior convictions, they total a criminal history category III. However, the career offender enhancement increased the offense level to 37 and criminal history category to VI to establish a sentencing range of 360 to life. The probation officer also noted that the § 841 (b)(1(A) provides for a mandatory minimum sentence of 20 years to life, and § 924(c)(1)(A)(ii) requires that a 5 years sentence be imposed consecutive to any other imprisonment.

Mr. James objects to the career offender enhancement, noting that its application after *Booker* is only advisory, and asserts that his sentencing range should be 151 to 188 based upon an offense level of 32 (based upon the jury finding that he possessed at least 50 grams of crack), and criminal history category III. While Mr. James acknowledges the need of the need of district courts to consult the career offender range, he asserts that he has compelling § 3553 factors that requires sentencing below that range. Finally, Mr. James objects to the assessment that he should be given a mandatory minimum sentence for the reasons set for in paragraph III, *infra*.

### III. Section 21 U.S.C. 841 is Unconstitutional Under *Apprendi* and *Booker* Requiring the Application of the Default Statutory Maximum of 30 Years With No Mandatory Minimums

The defendant contends that the Seventh Circuit in *Brough* erred in failing to apply the doctrine of judicial review in finding 21 U.S.C. § 841(b)(1) constitutional. *See United States v.*

*Brough*, 243 F.3d 1078 (7th Cir. 2001). The defendant asserts that when 21 U.S.C. § 841(b)(1) is properly reviewed in conformity with Supreme Court precedent, the statute must be declared unconstitutional, and 21 U.S.C. §841(b)(1)(A)-(B) must be severed to save the statute. Therefore the defendant may not be sentenced to more than thirty years, without regard to severed sections providing for minimum mandatory sentences.

A.  **No statute providing for judge-based default statutory maximum enhancement is constitutional under *Apprendi v. New Jersey, Blakely v. Washington* and *United States v. Booker***

*United States v. Booker* is the latest Supreme Court decision in an extended debate about the legislature's inability to designate statutory maximum enhancements as sentencing factors to be assessed by judges by a preponderance of the evidence, thereby circumventing the constitutional Fifth and Sixth Amendment requirements that such enhancements be proven to a jury beyond a reasonable doubt. *United States v. Booker*, 2005 U.S. LEXIS 628*; See also Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Jones v. United States*, 526 U.S. 227 (1999); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998); *McMillan v. Pennsylvania*, 477 U.S. 79 (1986); *Patterson v. New York*, 432 U.S. 197 (1977); *Mullaney v. Wilber*, 421 U.S. 684 (1975).

The Constitutional issues at stake in this statutory analysis is the proscription of any deprivation of liberty without "due process of law," Amdt. 5, and the guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury, Amdt. 6. Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi v. New Jersey* 530 U.S. 466, 476-477(2000) *quoting United States v. Gaudin*, 515 U.S. 506 (1995).

B.  **Doctrine of Judicial Review**

3

There are specific rules of judicial review that the court must follow when reviewing statutes for constitutionality in order to meet the constraints of the separation of powers. *Hill v. Wallace*, 259 U.S. 44, 71 (1922) (Taft, Ch.J.) (severability analysis "does not give the court the power to amend the act"). As seen most recently in *Booker*, the appropriate way to judicially review the constitutionality of a statute is to: (1) determine the statute's construction and operative effect by reviewing its plain meaning and, if appropriate, the legislature's intent; (2) determine whether that operative affect is unconstitutional or can be saved; and (3) if so, determine whether that unconstitutionality is severable. The Supreme Court has followed this mode of analysis in every one of its statutory analyses of the constitutionality of sentencing enhancing statutes. See *United States v. Booker*, 2005 U.S. LEXIS 628, *Apprendi*, 530 U.S. 466; *Jones v. United States*, 526 U.S. 227; *Almendarez-Torres v. United States*, 523 U.S. 224; *McMillan*, 477 U.S. 79; *Patterson*, 432 U.S. 197; *Mullaney*, 421 U.S. 684.

In the past, the Supreme Court has stricken attempts to circumvent the doctrine of judicial review. *Chapman v. United States,* 500 U.S. 453, 463(1991). The *Chapman* Petitioners argued that the rule of lenity required 21 U.S.C. § 841 to be construed in favor of the defendant, and to be construed to avoid any serious constitutional question that may result in a due process violation. In response, the Supreme Court concluded that:

> The rule of lenity, however, is not applicable unless there is a "grievous ambiguity or uncertainty in the language and structure of the Act," *Huddleston v. United States,* 415 U.S. 814, 831 (1974), such that even after a court has " 'seize[d] every thing from which aid can be derived,' " it is still "left with an ambiguous statute." *United States v. Bass,* 404 U.S. 336, 347 (1971) (quoting *United States v. Fisher,* 2 Cranch 358, 386, 2 L.Ed. 304 (1805)). "The rule [of lenity] comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Callanan v. United States,* 364 U.S. 587, 596 (1961). See also, *e.g., Moskal v. United States, supra,* 498 U.S., at 107-108, 111 S.Ct., at 465.

4

*Chapman*, 500 U.S. 453, 463. Thus, the Supreme Court did not allow the Petitioner to skip the rules of judicial review. The Court first required a review of the plain meaning of the statute, then the legislative history, an finally the rule of lenity and statutory interpretation to avoid unconstitutional construction in close cases. However, the Court noted that this last part of the procedure is " 'not a license for the judiciary to rewrite language enacted by the legislature.'" *Chapman, 500 U.S. 453, 464* quoting *United States v. Monsanto,* 491 U.S. 600, 611 (1989).

Any application of *Apprendi* that purports to authorize judges to contradict without reinterpreting a statute in order to enforce the statute exceeds the power of judges under Article III and violates the constitutional separation of powers by trenching upon the legislative domain. *Hill*, 259 U.S. at 71; *United States v Jackson,* 390 U.S. 570, 572-82 (1968) (voiding death penalty provision applicable only to those exercising right to jury trial; rejecting Government's proposed extra-statutory procedural overlays).

**C.    Seventh Circuit Precedent Establishes that Drug Type and Amount under Chapter 21 U.S.C. § 841(b) is a Congressionally Intended Sentencing Factor**

The Seventh Circuit in *Brough* recognized that prior to *Apprendi*, they had ruled that 21 U.S.C. §841(a) established the elements of the offense, and that 21 U.S.C. § 841(b)(1) established sentencing factors, including drug amount and type, which could be determined by a judge by a preponderance of the evidence. *Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001) citing *United States v. Edwards*, 105 F.3d 1179 (7th Cir. 1997), affirmed, 523 U.S. 511 (1998); *United States v. Jackson*, 207 F.3d 910 (7th Cir. 2000), remanded 531 U.S. 953 (2000), decision on remand, 236 F.3d 886 (7th Cir. 2001)  (recognizing that *Apprendi* makes any fact that increases the statutory maximum an element that must be proven to a jury beyond a reasonable doubt, but holding that plain error did not require reversal because the evidence was so overwhelming that no jury would have failed to

convict).

The *Brough* cout ruled that the default statutory maximum for drug offense is 20 years pursuant to § 841(b)(1)(C), *Brough*, 243 F.3 at 1080. Therefore, under *Apprendi*, any facts that could result in a sentence above 20 years must be found by a jury beyond a reasonable doubt. However, §841(b)(1)(A)-(B) increases the default sentence to life depending upon drug type and amount. Prior to *Apprendi*, the Seventh Circuit analysis of §841(b)(1) determined that this section clearly was established by Congress as sentencing enhancements, which could not be construed otherwise, including by the use of the doctrine of statutory construction:[1]

> The avoidance of the constitutional issue by statutory construction is not available in the case of section 841, because the division between the elements of the crime and factors relating to how severely to punish offenders is much clearer than in the statute interpreted in *Jones*. Subsection (a), captioned "Unlawful acts," defines the offense of distributing, etc. a controlled (or counterfeit controlled) substance, while subsection (b), captioned "Penalties," specifies how the "person who violates subsection (a) ... shall be sentenced"--namely more severely depending on the type and quantity of the drug. The defendants in this case were convicted of distributing a variety of drugs, including marijuana, the distribution of which calls for a much lighter sentence in section 841(b) than other drugs, notably crack cocaine, one of the major commodities sold by the Gangster Disciples. It is apparent that Congress intended the type and quantity of the drugs distributed by a defendant convicted under section 841(a) to be determined at sentencing, unlike the situation in *Jones*, and Congress's determination of the appropriate allocation of decisional responsibilities carries a presumption of constitutionality.

*Jackson*, 207 F.3d 910, 920. On remand, the *Jackson* court did not alter its analysis that the parts of § 841(b)(1) were intended by Congress to be sentencing factors. In further analysis, the Seventh Circuit ruled that § 841(b)(1) are not always sentencing factors, but they did not go so far as to say

---

[1] The doctrine of statutory construction provides that where a court examines the plain language and legislative intent of a statute and determines that "a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Jones v. United States*, 526 U.S. 227, 239 (1999).

that they are elements, or to explain when they are to be considered sentencing factors and when they are considered to be elements. *United States v. Nance*, 236 F.3d 820, 825 (7th Cir. 2000).

Clearly this is because a review of the legislative history demonstrates that in fact, when Congress referenced § 841(b)(1), they used terminology such as "penalties," "enhanced sentencing provisions," and "punishment", as opposed to "elements." *See S. Rep.* 98-225, 1984 U.S.C.C.A.N. 3182 (1st Sess. 98th Cong 1983). In Part A– Controlled Substances Penalties, § 2, the senate report noted that subsection (A) of the original § 841 punishes those who knowingly or intentionally manufacture, distribute, dispense or possess with intent to dispense a controlled substance. *Id.* However, the report notes, "the penalties for these offenses are set out in subsection (B) of § 841." *Id.* The report goes on to indicate that Section 502 of the Comprehensive Crime Control Act of 1984 "amends Title 18 U.S.C. 841(B) — the provisions which sets out the penalties for the most serious domestic drug trafficking offenses." *Id.*

There is no doubt that in enacting 18 U.S.C. § 841(b)(1), Congress intended this section to be sentencing enhancements, and not elements.

**D.    The Seventh Circuit in *United States v. Brough*, 243 F.3d 1078 Held That Congress Did Not Specify Who Determines What Facts Under What Burden in § 841(b)(1)**

Despite the *Jackson* court's accurate analysis that §841(b)(1) established sentencing enhancements, the *Brough* panel rejected a claim that the provisions of § 841(b)(1) are unconstitutional under *Apprendi*. The *Brough* panel noted that the statute was silent on the question of whether 841(b)(1) established penalties, and used the following improper statutory analysis to form its conclusion of constitutionality:

> If Congress had specified that only judges may make the findings required by §841(b), or that these findings must be made by a preponderance of the evidence, then § 841 would create a constitutional problem. But the statute does not say who makes the findings or which party bears what burden of persuasion. Instead the law

7

attaches effects to facts, leaving it to the judiciary to sort out who determines the facts, under what burden. It makes no constitutional difference whether a single subsection covers both elements and penalties, whether these are divided across multiple subsections (as § 841 does), or even whether they are scattered across multiple statutes (see 18 U.S.C.§§ 924(a), 1963).

*Brough* 243 F.3d 1078, 1079 (7th Cir. 2001).

**E.   Congress must allocate the authority between judge and jury in which is implicit or explicit in a criminal statute**

Contrary to *Brough*, the Supreme Court has ruled that Congress must define the contours of federal criminal offenses, *Bousely v. United States*, 523 U.S. 614, 620-21 (1998), and the courts cannot revise an allocation of authority between judge and jury which is explicit or implicit in a criminal statute. *United States v. Jackson*, 390 U.S. at 572-82 (rejecting government's attempt to save a statute through extra-statutory procedural overlays). The decision in *United States v. Evans*, 333 U.S. 483 (1948) defeats *Brough*'s construction based upon a specific congressional intent to leave the contours of § 841 for judicial determination. *See Evans*, 333 U.S. at 486 (Constitution limits the Court in supplying the undefined in criminal statutes).

One of the principal flaws of the statute in *Evans* was its ambiguity as to allowable unit of prosecution[2]. *Id.* at 490-91 (declining to resolve the "scope and quality of forbidden acts" chargeable in each count because it "would be to proceed in an essentially legislative manner for the definition and specification of the criminal acts, in order to make a judicial determination of the scope and character of the penalty.")

Drug type and amount are too intimately related to the allowable unit of prosecution to have

---

[2] The "allowable unit of prosecution" involves congressional intent to define exactly what conduct constitutes an offense for the purpose of the attachment of double jeopardy, thereby preventing multiple trials on different parts of the same acts constituting the offense. *See Sanabria v. United States*, 437 U.S. 54, 70 (1978).

been validly left to the courts for further definition. *Compare United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir. 1986) ("Congress intended the possession of each scheduled substances to be a difference offense"), with *United States v. Edwards*, 105 F.3d 1179, 1181 (7th Cir. 1998) ("a controlled substance" is only an element; drug types and amounts go to sentencing under the singular offense), *aff'd* 523 U.S. 511 (1998).

Indeed, the *Brough* statutory reinterpretation of § 841 constitutes no more than an improper "dynamic view of statutory interpretation, under which the text might mean one thing when enacted, and yet another if the prevailing view of the Constitution later changed." *Harris v. United States*, 536 U.S. 536, 556 (2002). In relying on *Brough*, the Second Circuit ruled that "[T]here is nothing in § 841 — nor is there usually in federal criminal statutes — which specifies a division of responsibility between judge and jury as to drug quantity . . . In respect to this statute at least, that division is, and in this circuit always has been, a judicially crafted overlay based upon constitutional principles and so too our interpretation of the statue." *United States v. Outen*, 286 F.3d 622, 636 (2d Cir. 2002); *see also United States v. Kelly*, 272 F.3d 622 (3d Cir. 2001) (relying on *Brough*). *Brough*, *Kelly* and *Outen* clearly rely on the "dynamic view of statutory interpretation" subsequently and clearly rejected by the Supreme Court in *Harris*. There is nothing to support the *Brough* analysis but the hope that its new statutory interpretation reconciles § 841 with *Apprendi* under the precepts of judicial review.

F.  **The *Brough* Interpretation of 21 U.S.C. § 841(b)(1) Does Not Save the Statute from a Declaration of Unconstitutionality Under *Apprendi* and *Booker***

The *Brough* court does not change the distinction between the "elements" of § 841(a) and the "events" of § 841(b); *Brough*, 243 F.3d at 1080; *see also Thomas v. United States*, 328 F.3d 305, 309 (7th Cir. 2003) (*Apprendi* "does not make drug quantity an 'element' of the offense under 21

U.S.C. § 841.") Instead, the *Brough* court holds that *Apprendi* authorizes the Court to treat the statute, which is silent on the issue of what are elements and what are penalties, in a way that clearly contradicts congressional intent that § 841(a) addresses the elements and § 841(b) addresses the penalties.

The *Brough*'s court ruled that "*Apprendi*" or "the Constitution" empowers the Court to keep the entire language of a clearly unconstitutional statute — as long as the Courts follows certain procedures — irrespective of the intent of the legislature and without declaring the statute in question unconstitutional.

*Apprendi* focus on the statute, not the particular sentence, is manifest in its restatement of the controlling constitutional principle: "[I]t is unconstitutional for a *legislature* to remove from the jury the assessment of facts that increase the prescribed range of penalties . . ." *Apprendi*, 530 U.S at 490 (emphasis added). Moreover, the Court refers to the "novelty" of such a "legislative scheme," and repeatedly refers to whether the operative facts of the statute "exposes" the defendant to an increased maximum. Id at 482-85, n. 10. The rule of *Apprendi* constitutes a constitutional test against which statutory *language*, and not application, must be compared. Consistent with judicial review, provisions of statutes that do not meet the constitutional test of *Apprendi* must be stricken. The Supreme Court has stated:

> It is one thing [for a court] to fill a minor gap in a statute – to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.

*United States v. Jackson*, 390 U.S. 570, 580 (1968).

The Seventh Circuit performed first part of judicial review prior to *Apprendi*, and determined that § 841(a) involved elements and § 841(b) involved sentencing enhancements above the default

maximum. *Jackson*, 207 F.3d 910, 920. The *Brough*'s court, in its constitutional analysis, never altered *Harris'* ruling that drug amount and type are not elements of the offense. *Brough*, 243 F.3d at 1080. The *Brough*'s court could not do this, because it would be contrary to both the plain reading and the legislative history of the statute.

Instead, the *Brough* approach interprets *Apprendi* as a matter of procedure, rather than as a constraint upon the legislative definition of "crime," and further determines that the "procedure" is governed by the courts (i.e. "the Constitutional" or "*Apprendi*"), completely disregarding the doctrine of judicial review that has been established by a long line of Supreme Court decisions. In essence, the *Brough*'s court renders judicial review pointless, and declares the Constitution to be a self-executing document that automatically converts inconsistent legislative enactments to meet its requirements, without ever making a finding of unconstitutionality, or determining severability. The *Brough*'s court completely ignored the legislative intent of the silent statute, and in doing so constructively rewrote the statute to comply with the Constitution under *Apprendi*.

The separation of powers doctrine simply does not allow Courts to rewrite statutes, directly or constructively. *See, e.g., Evans*, 333 U.S. at 486. The *Brough*'s analysis is inconsistent with the limited role judicial review plays in our system of divide government, *see Miller v. French*, 530 U.S. 327, 340-41 (2000), and the Constitution's assigning power over the definition of crime to Congress, denying courts that power. *See Miller v. French*, 530 U.S. 327, 340-41 (2000); *Bousley*, 523 U.S. at 620-21. The approach of *Brough* represents an unprecedented and unconstitutional adjudication that exceeds the only legitimate mode of constitutional adjudication – judicial review.

G.   **The State Courts have not abandoned the limitations of judicial review in response to Apprendi.**

The Kansas Supreme Court declared the Kansas upward durational departure statute

unconstitutional under *Apprendi*. *State v. Gould*, 23 P.3d 801 (Kan. 2001). In response, the State attempted to save the statute on grounds identical to the federal approach to *Apprendi* in Federal drug cases arguing:

> The State argues that Gould did not render the statute vesting the trial court with authority to impose durational upward departures unconstitutional, but rather only the scheme employed by the courts in doing so. The State points out that the procedure employed by the trial court was in accordance with the requirements articulated in *Apprendi* and consistent with the Kansas Legislature's response to *Gould*.

*State v. Kessler*, 73 P.3d 761, 773 (Kan. 2003). The Kansas Supreme Court squarely refused to "work around a flawed sentencing scheme," holding instead that "where the statutory procedure has been found unconstitutional, the district court has no authority to impose such a sentence." *Id.* Other State supreme courts have firmly adhere to the approach of applying *Apprendi* consistent with the limited powers of judicial review. *See, e.g., State v. Grossman*, 636 N.W.2d 545, 551 & n.3 (Minn. 2001) (under *Apprendi*, statute is unconstitutional as applied, and likely facially unconstitutional); *State v. Palmero*, 818 So.2d 745, 753-54 (La. 2002) (declaring statute unconstitutional); *Woldt v. People*, 64 P.3d 256, 272 (Colo. 2003) (under *Ring,* death penalty statute is unconstitutional; life sentence must be applied on remand). Notwithstanding the consequences of reduced sentences and statutes declared unconstitutional, these States have enforced *Apprendi* consistent with the limited role courts are allowed in enforcing the United States Constitution against unconstitutional legislative enactments.

No matter how strongly the courts of appeal may want to avoid the consequences of declaring §841 unconstitutional, they are bound by the strictures of judicial review, and cannot abdicate their constitutional responsibilities by constructively re-writing 21 U.S.C. § 841.

### IV. Statement of Reasons for Imposing Sentence

If this Court imposes a sentence exceeding 24-months, the defendant hereby requests that this Court state in open court during sentencing its reasons for imposition of the sentence, including its reasons for applying or denying application of (1) requested 18 U.S.C. § 3553(a) factors (2) traditional sentencing factors; and (3) non-traditional but applicable sentencing factors. See 18 U.S.C. § 3553(c).

Respectfully Submitted,

LOUIS JAMES, Defendant

RICHARD H. PARSONS
Federal Public Defender

BY: s/Tiffani D. Johnson
_____
TIFFANI D. JOHNSON, Bar No. 6278909
Assistant Federal Defender
300 West Main Street
Urbana, Illinois 61802
Phone: (217) 373-0666
Fax: (217) 373-0667
Email: tiffani_johnson@fd.org

### CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Assistant United States Attorney Timothy Bass.

s/Tiffani D. Johnson
_____
TIFFANI D. JOHNSON, Bar No. 6278909
Assistant Federal Defender
300 West Main Street
Urbana, Illinois 61802
Phone: (217) 373-0666
Fax: (217) 373-067

Email: tiffani_johnson@fd.org

C:\Documents and Settings\Tiffani D Johnson\My Documents\CLIENTS\jamessentcom.frm